## CHICAGO, ST. P., M. & O. RY. CO. v. WASHINGTON.

### No. 14004.

United States Court of Appeals
Eighth Circuit.

Jan. 31, 1950.

Rehearing Denied March 7, 1950.

Warren Newcome, St. Paul, Minn. (Alfred E. Rietz, St. Paul, Minn., Lowell Hastings, Chicago, Ill., Gerald F. Fristensky and G. H. Henke, St. Paul, Minn., were with him on the brief), for appellant.

Amherst Tautges, Minneapolis, Minn. (Donald A. Chapman, Minneapolis, Minn., was with him on the brief), for appellee.

Before SANBORN, JOHNSEN, and RIDDICK, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal from a judgment in favor of the plaintiff (appellee) entered upon a verdict of a jury in an action to recover for personal injuries. The plaintiff lost a leg and an arm and was otherwise injured, in the railroad yards of the defendant (appellant) in Sioux City, Iowa, on the night of February 11, 1947. In his complaint the plaintiff alleged that the accident and his injuries resulted from the negligent failure of the defendant to maintain in a safe condition a public sidewalk which crosses the defendant's yards from east to west and is on the south side of Seventh Street where that street crosses the tracks of the defendant at grade and at a right angle. The plaintiff alleged that, because of the dangerous condition of the sidewalk, he fell and became helpless, and in that condition involuntarily came into a position of danger upon one of the defendant's tracks, and that the defendant negligently caused a locomotive, car or cars to come into collision with him. There were other allegations of negligence, which need not be stated. The defendant denied that it was guilty of actionable negligence, and alleged that the plaintiff was negligent and that his negligence caused or contributed to his injuries.

The judgment is challenged upon the grounds: (1) that there was no substantial evidence that the defendant was guilty of actionable negligence; and (2) that the court erred in refusing to instruct the jury, as requested by the defendant, that "There is no evidence in this case which would warrant you in finding defendant negligent in that it failed to exercise ordinary care for the protection of the plaintiff after discovering him in defendant's yards prior to his injury."

The railroad yards of the defendant and the Illinois Central Railroad Company lie between Wall and Clark Streets in Sioux City. Those streets run north and south, parallel to the tracks. Clark Street is on the east and Wall Street is on the west. Seventh Street runs east and west across the yards. The defendant's northbound and southbound main lines and ten lead or switch tracks, and one main line and nine lead or switch tracks of the Illinois Central Railroad Company, cross Seventh Street. The easterly ten tracks are owned and maintained by the Illinois Central, and the westerly twelve tracks by the defendant. The east boundary line of the defendant's right-of-way is a few feet east of the east rail of its northbound main track. That track is east of all of the defendant's other tracks. The defendant's southbound main track is just west of and adjacent to its northbound main track. Between Wall and Clark Streets there is, on Seventh Street, a sidewalk for pedestrians, which crosses all of the tracks of the Illinois Central and of the defendant.

The plaintiff testified that prior to the day of the accident, he had left Minneapolis for Sioux City, to look for work; that he had been promised a job at the Armour & Company plant in the latter city; that on February 11, 1947, he intended to take a train for Minneapolis, about 10:30 p. m., to get his clothes; that about ten o'clock he started for the depot, accompanied by a

friend, who left him at the corner of Seventh and Clark Streets (east of the railroad yards); that the plaintiff then walked west on the sidewalk on Seventh Street; that when he had reached approximately the middle of the yards, he stumbled into a pile of snow and ice, that he tried to "catch" himself, and his right foot slipped into a hole; that his feet went out from under him; and that the last thing he knew, until ten o'clock the next morning when he woke up in the hospital, his feet were in the air and his head was going back.

The record shows that later in the evening, probably between 11:15 and 11:30, the plaintiff was found, badly injured, between the north and southbound main lines of the defendant, close to the west rail of the northbound main line, and about 150 feet south of the Seventh Street crossing; that an ambulance was called and he was taken to the hospital; that two switch engines of the defendant were working in the yards that night; that one switch crew had placed a string of freight cars on the southbound main line, immediately south of the Seventh Street sidewalk; that these cars were standing at that location when the other switch crew, with an engine facing south, proceeded in that direction over the crossing on the northbound main line (the line just east of the cars); that Louis Nugent and E. L. Jones were, respectively, the foreman and a switchman in this crew; that Nugent was on the front footboard of the engine; that shortly after passing over the Seventh Street crossing, at about 11:05 or 11:10 p. m. according to Nugent, and 10:45 or 10:50 p. m. according to Jones, Nugent saw a man standing between two of the freight cars on the southbound main line, at a point about 150 feet south of Seventh Street; that, on Nugent's signal, the engine was stopped and he walked over to the man, reached in and pulled him out from between the cars, asked him what he was doing in there, and, receiving no response, told him that he had better get out, that it was not very safe, and showed him the way to go; that the man started walking toward Seventh Street; that Nugent returned to the footboard of the engine; that the engine proceeded south a short distance; that

Jones saw the man stop walking after he had gone about forty feet, and again go in between the cars on the southbound main line; that the engine was again stopped and Jones walked over to the man and ordered him out of the yard; that the man started to walk toward Seventh Street again, and when last seen by the crew was still walking in that direction.

The record also shows that the engine then proceeded south to the stock yards to help make up a freight train; that, after that, the engine went north and was on the southbound main line as it approached Seventh Street; that the track was then clear; that when the switch engine was about 100 yards south of Seventh Street, Jones, the switchman, saw the plaintiff on the ground; that he was the man that they had previously ordered out of the yard.

The evidence as to the condition of the sidewalk on Seventh Street was in conflict. The plaintiff and his witnesses testified that, on the night of the accident and previously, it had been in a dangerous condition. Their testimony was contradicted by the defendant's witnesses. The plaintiff alone testified as to his fall on the sidewalk. He called, as a witness, Nugent, the foreman of the switch crew, and Jones, the switchman, apparently to show that the plaintiff's actions after his alleged fall were such as to indicate that he was not, or might not have been, able to take care of himself, and to substantiate his claim that his being run over was due to the injury he alleged he received when he fell on the sidewalk.

■ The applicable substantive law is that of Iowa. Section 478.1 of the Iowa Code of 1946, I.C.A., requires a corporation operating a railway to "construct at all points where such railway crosses any public road good, sufficient, and safe crossings and cattle guards," and provides that "Any railway company neglecting or refusing to comply with the provisions of this section shall be liable for all damages sustained by reason of such refusal or neglect, and it shall only be necessary, in order to recover, for the injured party to prove such neglect or refusal." This section has been construed to mean that a railway company

must contruct and maintain safe crossings. Farley v. Chicago, Rock Island & Pacific Ry. Co., 42 Iowa 234.

At the close of the evidence, the defendant made a motion for a directed verdict, which was denied.

The court instructed the jury, in substance, that it was the duty of the defendant to use reasonable care to keep the walk on Seventh Street in reasonably safe condition for the use of the public, and that if the jury found that the defendant had failed to fulfill that duty, and that the failure proximately resulted in injury to the plaintiff, it might find in the plaintiff's favor. The court also charged the jury as follows: "You are further instructed that whether or not you find that the railroad was negligent in the maintenance of this cross walk, plaintiff would be entitled to recover, if you further find that the defendant's employees found him in a dazed and helpless condition on the railroad property and did not exercise reasonable and ordinary care under the circumstances then demanded to avoid injuring him."

The defendant contends that, under the plaintiff's evidence, it was no more probable that he fell on the part of the sidewalk the defendant was required to maintain than on the portion of it which the Illinois Central Railroad Company was required to maintain.

On direct examination, the plaintiff testified that, before he fell, he had crossed one main line track. Under the evidence, that would be the main line track of the Illinois Central. The plaintiff was asked, "How far from the first one you crossed was it before something happened to you?" His answer was, "Just as I got close to the first one, that is where I fell. I stumbled into a pile of—" He then told how he came to fall. On redirect examination, the plaintiff testified as follows:

"Q. I am not quite sure, Mr. Washington, whether our record shows clearly where it was that you fell. I think yesterday you testified that you had crossed the first main line track that you came to? A. Yes.

"Q. And that it was sometime after that that you fell? A. Yes.

"Q. Had you gotten as far as the second main line track that you came to or not? A. Yes.

"Q. When you fell? A. Yes.

"Q. Tell us where it was that you fell with respect to the second main line track?

"A. Well, after I crossed the first main line track, got to the second track, I stumbled and that is where I fell.

"Q. How far from the second main line was it that you were when you did fall?

"A. Just in between one main line to the other. It is a space I guess about that wide.

"Q. Indicating about two feet? A. Yes.

"Q. Do you mean that you were two feet to the east of the second main line rail?

"A. No, I was to the second main line.

"Q. You were to the second main line? A. Yes.

"Q. That is when you fell down? A. Yes."

From this evidence, viewed, as it must be, in the aspect most favorable to the plaintiff, we think the jury reasonably could infer that the plaintiff fell at a point on the crosswalk where the second main line that he came to—the northbound main track of the defendant—crosses the walk.

The defendant also contends that there is no adequate evidentiary basis for a finding that the plaintiff sustained an injury from the fall on the sidewalk, which left him helpless, or as the result of which he was later run over by a car or cars in the yards; that his testimony that he was unable to recall anything from the time he fell to the time he woke up in the hospital the next morning after being seriously injured and having an arm and a leg amputated, would not tend to establish that he was in helpless physical and mental condition after he fell on the sidewalk. It is, no doubt, true that the serious injury later suffered by the plaintiff, which included a concussion of the brain, may have caused the plaintiff's lapse of memory; but if the jury

believed that he fell on the sidewalk, as his testimony indicated, and that he remembered nothing further until the next morning, we think that the jury might infer that, as a result of the fall, his mental condition was such as to deprive him of his ability to protect himself against the hazards of being run over, and that the fall was the proximate cause of the accident which resulted in his serious injuries.

Our conclusion is that the District Court did not err in submitting to the jury the question whether the defendant was negligent with respect to the maintenance of the sidewalk and whether its negligence in that regard was the proximate cause of the plaintiff's injuries.

The troublesome question in the case is whether there was a sufficient evidentiary basis for instructing the jury that, whether or not they found that the defendant was negligent in the maintenance of the sidewalk, the plaintiff would be entitled to recover if the jury determined that the defendant's employees found him in a dazed and helpless condition on the defendant's property and did not exercise reasonable and ordinary care to avoid injuring him.

We think that it does not conclusively appear that there was completely lacking any evidentiary basis for an inference that the switchmen of the defendant, who twice removed the plaintiff from between the cars which were shortly to be moved, knew or should have known that he was in a dazed condition and likely to be injured if left in the yards. The evidence of Nugent and Jones indicates that the plaintiff was acting irrationally and that they suspected —even if they did not know—that he was or might be a sick man. He made no response to their inquiries, and, after being pulled from between the cars the first time, walked only one car-length before going between the cars again. The switchmen reasonably might have anticipated that if he repeated that performance, after being removed from the cars the second time, he would be almost certain to be injured. We cannot say that it was reversible error for the trial court to refuse to charge the jury that there was no evidence to sustain a finding that the

defendant was negligent in failing to exercise ordinary care for the protection of the plaintiff after discovering him in its yards. It is to be remembered that a jury has broad powers with respect to the drawing of inferences from evidence, even when it is undisputed. See Chicago & Northwestern Railway Co. v. Grauel, 8 Cir., 160 2d 820, 826, and cases cited.

The judgment is affirmed.