**STANDARD ACC. INS. CO. OF DETROIT, MICH. v. WINGET et al.**

**WINGET v. STANDARD ACC. INS. CO. OF DETROIT, MICH.**

No. 13047.

United States Court of Appeals, Ninth Circuit.

May 15, 1952.

Fulcher & Wynn, Los Angeles, Cal., for appellant, Standard Acc. Ins. Co.

Neil D. Heily, Oxnard, Cal., for appellant, Vivian Winget.

Before MATHEWS and ORR, Circuit Judges, and YANKWICH, District Judge.

YANKWICH, District Judge.

On January 26, 1949, near Oxnard, Ventura County, California, an automobile driven by Billy Ray Towry was involved in an accident. Two persons riding in the automobile, Vivian Winget and Thomas B. Mack, sued Towry in separate actions. In what follows, we shall refer to the parties by their last names.

The two cases were consolidated for trial. On March 31, 1950, judgment was entered in favor of Winget in the sum of $32,000.00 with interest at the rate of 7 per cent from the 30th day of March, 1950, and in favor of Mack in the sum of $15,000.00 with interest at the same rate from the same date. Both plaintiffs recovered costs.

On September 23, 1950, the present action was instituted by Winget in the same state court. The defendants were Standard Accident Insurance Company,— to be referred to as Standard,—and Mack. The Complaint alleged that neither judgment had been paid and that Towry, at the time of the accident, carried a policy with Standard which obligated it to pay the sum of $20,000.00 towards the satisfaction of the judgment. Stating that Standard refused to pay, the complaint asked that Standard deposit the principal sum of $20,000.00 in court, together with interest, that out of this amount, the Court award the plaintiff 68.0851 per cent of the principal sum or a total of $13,617.02, and that Standard be enjoined from settling with Mack.

The cause was removed by Standard to the United States District Court for the Southern District of California on the ground of diversity of citizenship. 28 U.S. C. § 1441.

At the trial, the plaintiff was allowed to amend the complaint so as to include a demand for additional interest on the total sum of her judgment against Towry, $32,097.80. During the course of the trial, Mack settled his claim with Standard for the sum of $6,000.00. Winget's case went to the jury, which rendered a verdict in her favor in the sum of $10,000.00 on which judgment was entered.

Both Winget and Standard have appealed.

Other facts will appear further on in the discussion.

I

The Standard Appeal

We consider the Standard appeal first.

■ Preliminarily, it should be stated that, as the Standard policy was executed in California, it must be interpreted in accordance with California law. Ostroff v. New York Life Ins. Co., 1939, 9 Cir., 104 F.2d 986. As federal jurisdiction stems merely from diversity, 28 U.S.C. § 1332, we must apply state law. 28 U.S.C. § 1652; see, Guaranty Trust Co. v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079; Angel v. Bullington, 1947, 330 U.S. 183, 192, 67 S.Ct. 657, 91 L.Ed. 832; Cohen v. Beneficial Indus. Loan Corp., 1949, 337 U.S. 541, 555-557, 69 S.Ct. 1221, 93 L.Ed. 1528.

Standard in its answer charged Towry with failure to cooperate in violation of the cooperation clause of the policy which reads:

"The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits."

At the trial several acts of alleged non-cooperation consisting of statements given to others than Standard at the time of the accident and at the hospital were urged. At the oral argument before us, however, those were abandoned. The only lack of cooperation now charged is the fact that in a deposition taken on October 28, 1949, prior to the trial of the case in the State Court, the defendant in answer to a question put to him not by the attorney for Standard, but by opposing counsel, stated that at the time of the accident *he*

*had not* been drinking. On March 16, 1950, after consultation with his own attorney he corrected the deposition, in order, as he stated to the deposition notary, "to make it appear truthful", and signed it.

In giving to his own counsel, employed by his father to assist in the trial of the case, the reasons for his denial, he stated that he had not had an opportunity to talk with counsel for the insurance company prior to the giving of the deposition, that he met his attorney, went into the office of the attorney where the deposition was taken, and they immediately started asking him questions. When they came to the question of intoxicating liquors, he was not sure in his own mind whether beer was in the category of intoxicating liquor, that he wanted to protect the insurance company as much as he could and just said, "No, he hadn't had any intoxicating liquor to drink." The attorney then advised him that it was of utmost importance to correct his deposition to make it conform to the truth.

This, in substance, was the version of the conversations given at the trial by Towry and his counsel, over Standard's objections. The trial in the state court began on March 28, 1950.

It does not appear that the deposition was used at the trial for any purpose and the question of intoxication did not enter into the determination of the cases in the state court. At the trial, Winget's attorney sought to eliminate a cause of action charging intoxication. On objection by the counsel for the defendant, the court allowed the cause of action to remain. However, there was no evidence offered that Towry was, in fact, under the influence of liquor. The evidence in the record in the present case shows that over a period of several hours, Towry consumed five or six bottles of beer.

■ The trial court in the case before us allowed Towry and others to explain the circumstances under which he made the change in his testimony over Stand-

ard's objection. These have already been given in summary. Standard urges error in these rulings, as also in the denial of a motion for a directed verdict based upon the claim that lack of cooperation appeared affirmatively. Rule 50(a), Rules of Civil Procedure, 28 U.S.C. A motion for a directed verdict may only be granted when a verdict the other way would have to be set aside by the court. Gunning v. Cooley, 1930, 281 U.S. 90, 94–95, 50 S.Ct. 231, 74 L.Ed. 720; Galloway v. United States, 1943, 319 U.S. 372, 395–396, 63 S.Ct. 1077, 87 L.Ed. 1458.[1]

The same conditions must exist to warrant the granting of a judgment notwithstanding the verdict even where the court reserves ruling on the motion for a directed verdict. Boulter v. Commercial Standard Ins. Co., 1949, 9 Cir., 175 F.2d 763, 768. So, from whatever standpoint the matter be considered, the problem resolves itself into the question, "Was the misstatement in the depositon, corrected before the trial, a failure to cooperate?", which, as a matter of law, entitled Standard to insist on the exclusion of any explanation of the action and made it imperative on the court to direct a verdict or, declining to do so, to grant judgment notwithstanding the verdict when the jury returned a verdict for the plaintiff.

The trial court took the view that the question was one of fact for the jury. Under appropriate instructions, which were not objected to, Rule 51, Federal Rules of Civil Procedure, it placed the matter before them. The following two excerpts from the charge are characteristic:

"The insured must tell his insurer the complete truth concerning the accident and he must stick to this truthful version throughout the proceedings. He must not embarrass or cripple his insurer in its defense of a civil suit against him by switching from one version to another. Nothing is more dangerous to an insurer than an insured who deliberately falsifies the facts."

1. See, Pence v. United States, 1942, 316 U.S. 332, 62 S.Ct. 1080, 86 L.Ed. 1510; Myers v. Reading Company, 1947, 331 U.S. 477, 485–486, 67 S.Ct. 1334, 91 L.Ed. 1615; Eckenrode v. Pennsylvania R. R. Co., 1948, 335 U.S. 329, 330, 69

"If you find that the said Billy Ray Towry did fail to cooperate with the defendant as such term has been defined to you, in these instructions, you may not speculate as to what might have been the final outcome of the actions against him in the event he had not been guilty of such failure."

Later the court made a finding reciting that the issue had been submitted to the jury who had determined that Towry had cooperated.

As we read the California cases, concealment and misrepresentation which violate the cooperation clause must be (a) willful, and (b) of a character which either injures the insured, or are such that the court may infer injury either from the nature of the misrepresentation or concealment, or from the duration of the period during which an admittedly false statement of facts was kept before the insurer. Purefoy v. Pacific Automobile Indemnity Exchange, 1935, 5 Cal.2d 81, 53 P.2d 155; Valladao v. Fireman's Fund Indemnity Co., 1939, 13 Cal.2d 322, 89 P.2d 643; Margellini v. Pacific Automobile Ins. Co., 1939, 33 Cal.App.2d 93, 91 P.2d 136; Wright v. Farmers Automobile Inter-Ins. Exchange, 1940, 39 Cal.App.2d 70, 102 P.2d 352; Porter v. Employer's Liability Assurance Co., Ltd., 1940, 40 Cal.App.2d 502, 104 P.2d 1087; Home Indemnity Co. of New York v. Standard Acc. & Ins. Co. of Detroit, 1948, 9 Cir., 167 F.2d 919.

Earlier California cases made a showing of injury from non-cooperation a condition precedent to a successful defense on that ground. Panhans v. Associated Indemnity Corporation, 1935, 8 Cal.App.2d 532, 47 P.2d 791; Wormington v. Associated Indemnity Corporation, 1936, 13 Cal. App.2d 321, 324–325, 56 P.2d 1254. Later California cases, especially Purefoy v. Pacific Automobile Indemnity Exchange, 1935, 5 Cal.2d 81, 53 P.2d 155, and Valladao v. Fireman's Fund Indemnity Co., 1939, 13 Cal.2d 322, 89 P.2d 643, indicate that the question is still open. But it is to

be noted that in every one of the cases cited, including the decision of this court, in which non-cooperation because of falsification was found, the court was convinced that the concealment, because of its nature or the long duration of time for which it was maintained, was of such character that the court, as a matter of law, could infer harm to the insured.

Thus, in Purefoy v. Pacific Automobile Indemnity Exchange, supra, no notice was given of the accident and there was long delay, thus depriving the insurer of the opportunity of making prompt investigation. In Valladao v. Fireman's Fund Indemnity Company, 1939, 13 Cal.2d 322, 89 P.2d 643, there was misrepresentation as to who operated the automobile.

In Margellini v. Pacific Automobile Ins. Co., supra, there was not only failure to make a report of the accident by the wife of the insured, *who was also covered by the policy,* and who drove the automobile, but she also concealed her whereabouts, despite repeated and prolonged efforts to locate her.

In Wright v. Farmers Automobile Inter-Insurance Exchange, supra, the insured, after verifying the Answer, gave at the trial a completely changed version of the facts, so that,—as the court put it,—he destroyed any hope of a judgment "in his favor".

In Home Indemnity Co. of New York v. Standard Accident & Ins. of Detroit, supra, the defendant had given several different versions of the accident ranging from denial that he had been in any accident at all to the claim that if any accident happened, he must have been asleep. As a person was killed in the accident, this court held that the insurer was justified in withdrawing from the defense of the action.

In Porter v. The Employers' Liability Assurance Corporation, Limited, 1940, 40 Cal.App.2d 502, 104 P.2d 1087, the court said:

S.Ct. 91, 93 L.Ed. 41; Sorvik v. United States, 1931, 9 Cir., 52 F.2d 406, 410; United States v. Bemis, 1939, 9 Cir.,

107 F.2d 894, 897; Paul v. Elliot, 1939, 9 Cir., 107 F.2d 872, 874.

"What constitutes cooperation, or lack of it, on the part of the assured within the meaning of such clauses, is a question of fact, except where there is no dispute in the evidence. Valladao v. Fireman's Fund, supra. Where, however, there is a conflict as to what was said by the insured, that conflict, like other conflicts, is determined by the findings of the lower court." Porter v. Employers' Liability Assurance Corporation, Limited, supra, 40 Cal. App.2d at pages 510–511, 104 P.2d at page 1092.

■ It is true that in the instant case, the fact of the misstatement in the original deposition is undisputed. But before the deposition was released, a correction was made and the true version given. There is room in law, as in religion, for the *locus penitentiae*. The insured was entitled to explain the circumstances under which the change was made. And the trial court properly left it to the jury to determine whether this statement, withdrawn before it had become frozen in the record of the deposition, constituted a lack of cooperation.

In all the cases just referred to, there was a showing that the insurance company acted upon the misrepresentation or concealment and took a position from which they could not deviate without harm. In the present case, nothing of this character happened. Much as one may condemn falsehoods of any kind, we do not believe that a solemn contract of insurance should be voided upon a showing of a false statement made under circumstances which a jury found justified.

This conclusion finds support in the decision of this Court in Pacific Indemnity Co. v. McDonald, 1939, 9 Cir., 107 F.2d 446, 131 A.L.R. 208, where, as in the case at bar, the insured made a false statement which he later withdrew. The Court, through Judge Wilbur, said:

"The prompt withdrawal of the falsehood cured the default in the absence of some showing that the company was prejudiced by the delay in telling the truth." Pacific Indemnity Co. v. McDonald, supra, 107 F.2d at page 450.

■ This decision was made under Oregon law. A similar situation arose in General Acc. Fire & Life Assur. Corporation v. Rinnert, 1948, 5 Cir., 170 F.2d 440, under the law of Alabama. There, the assured's daughter falsely stated to the insurer's attorney and adjuster, after the accident, that she was driving the automobile. In fact, she had permitted a friend to drive it. Five days after the accident, she corrected the statement and gave them a true statement of the facts. In an action on the policy, the insurance company pleaded lack of cooperation. The case was tried by the Court with an advisory jury. The Court submitted special interrogatories to the jury,—one of them being the question whether the insured broke the cooperation clause. The jury answered in the negative. The Court accepted the verdict and made a finding of its own that there was no substantial breach of the cooperation clause which invalidated the policy. The Court followed Pacific Indemnity Co. v. McDonald, supra, and discussing cases in which a falsehood had been held a violation, used this language:

"All cases examined which have denied recovery as a matter of law because of false statements constituting non-cooperation by the insured are clear on their facts. In every one of them the false statements were repeated and persisted in for long periods and in most instances to or through the trial of the damage suits. Another line of cases holds the determination of material and substantial non-cooperation by the assured is a question of fact. These are cases where the materiality of the breach had to be determined before the law was applied.

"To deny recovery in this case as a matter of law is to disregard the question of fact presented by the evidence as to whether Virginia Woodson's false statement, quickly corrected, did, as a matter of law, constitute material non-cooperation." General Acc. Fire &

Life Assur. Corp. v. Rinnert, supra, 170 F.2d at page 441.

While these decisions were made under Oregon and Alabama law respectively, they represent the majority rule in cases of this character which has been accepted by writers on the subject. Blashfield's Cyclopedia of Automobile Law and Practice, Perm. Ed., 1945, Vol. 6, Part 2, Sec. 4059, pp. 74, 78. They comport with the spirit of the California cases we have discussed. They stress the fact that the misrepresentation must be material. And it is not considered material when the false statement is withdrawn or corrected in time not to prejudice the defense of the case. As said in General Acc. Fire & Life Assur. Corp. v. Rinnert, supra, 170 F.2d at page 442:

"The misstatement was corrected long prior to the trial of the causes which resulted in the judgments; the insurance company had the facts and was in position to settle if it saw fit to settle, to defend if it saw fit to defend, as it did. With the exception of the misstatement that she was driving the car, as originally made, there was no variance in her testimony given at the trial as to the accident from the statements she originally made. Since the only failure to cooperate charged by the insurance company is the original misstatement, which was promptly corrected, we agree with the lower court that there was cooperation within the terms of the policy, and that no prejudice to the insurer of a substantial and material nature resulted."

These cases emphasize the fact that cooperation implies not an abstract conformity to ideal conduct, but a pragmatic question to be determined in each case in the light of the particular facts and circumstances. And when a jury, weighing the circumstances surrounding a particular event, has concluded that there is no lack of cooperation, and the trial judge, who heard the same testimony, has accepted the verdict, it should not be disturbed on appeal. For the jury has great latitude in drawing inferences even from undisputed facts Elzig v. Gudwangen, 1937, 8 Cir., 91 F.2d

434, 440–441; Lavender v. Kurn, 1946, 327 U.S. 645, 652–653, 66 S.Ct. 740, 90 L.Ed. 916; Chicago & N. W. R. Co. v. Grauel, 1947, 8 Cir., 160 F.2d 820, 825–826; Chicago, St. P. M. & O. Ry. Co. v. Washington, 1950, 8 Cir., 179 F.2d 548, 552; Hoyt v. Clancey, 1950, 8 Cir., 180 F.2d 152, 154–155.

We conclude, therefore, that the trial court was right in allowing Towry and his witnesses to explain his previous misstatements, in submitting the question of cooperation to the jury, and that there was no error in refusing to direct a verdict or to render judgment notwithstanding the verdict on the ground of non-cooperation.

II

The Winget Appeal.

The Winget appeal stems not from the jury's verdict, but from the special findings which the Court made after the jury rendered the general verdict in favor of the plaintiff. Two questions are involved.

(A) Extent of Liability Under the Policy.

The first comes from the refusal of the trial court to render a judgment in favor of Winget in the sum of $13,617.02 instead of $10,000.00. The amount is arrived at by totaling the two judgments in favor of Winget and Mack and establishing a percentage of 68.0851 for Winget and 31.-9149 percent for Mack. These percentages, if applied to the maximum liability under the policy, $20,000.00, would call for an award to Winget of $13,617.02. The answer to the contention is very simple.

The policy *does not* create a fund of $20,-000.00 to be distributed pro-ratedly to various persons according to the amount recovered. On the contrary, the policy, read in its entirety, shows distinctly that the limit is *$10,000.00* for "each person". Indeed, Paragraph 6 of the Declaration provides:

"The insurance afforded is only with respect to such and so many of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as

stated herein, subject to all of the terms of the policy having reference thereto.

coverages in court as a fund to be distributed by the Court after the amount to be

| Coverages | | Limits of Liability | Policy No. | Premium |
|---|---|---|---|---|
| (A) Bodily Injury Liability | $10,000 Each person | $20,000 Each accident | J 894065 | $20.70 |
| (C) Medical Payments | $2,000 Each person (Named Insured Included)" | | | 7.00 |

Other provisions of the policy, reproduced in the margin, tie to this clause.[2] They clearly limit recovery of each person to $10,000.00. See, Mannheimer Bros. v. Kansas Casualty & Surety Co., 1921, 149 Minn. 482, 184 N.W. 189.

This interpretation accords with logic and good sense. Otherwise, in the case of multiple injuries, the insurance company would not be in a position to determine its liability or settle with one of the claimants until recovery has been had by all the persons injured. This would discourage attempts at settlement and would almost require, in each case, the insurance company to do what Winget sought to have them do here—to deposit the full amount of the

recovered by each of the injured persons has been determined.

■ We are bidden to construe contracts,—even contracts of insurance,—reasonably. Burr v. Western States Life Insurance Company, 1931, 211 Cal. 568, 576-597, 296 P. 273; Blackburn v. Home Life Insurance Co., 1941, 19 Cal.2d 226, 229, 120 P.2d 31; Protex-A-Kar Co. v. Hartford Accident & Indemnity Co., 1951, 102 Cal.App.2d 408, 412, 227 P.2d 509. Words are to be construed in the sense in which they are ordinarily used. California Civil Code, Sec. 1644; California Code of Civil Procedure, Sec. 1861; Pacific Portland Cement Co. v. Food Mach. & Chem. Corp., 1949, 9 Cir., 178 F.2d 541, 552.[3] And

2. The policy provides that Standard: "Agrees with the insured, named in the Declaration made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the Declarations and **subject to the limits of liability, exclusion, conditions and other terms of this policy:** (Emphasis added)

Insuring Agreement

"I Coverage A—Bodily Injury Liability * * * To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of the ownership, maintenance or use of the automobile."

In the "condition of the policy", the limits of liability are defined as follows in section 1:

"**Limits of Liability—Coverage A.** * * * The limit of bodily injury liability stated in the declarations as ap-

plicable to 'each person' is the limit of the company's liability for all damages, including damages for care and loss of services, arising out of bodily injury, including death at any time resulting therefrom, sustained by one person in any one accident, the limit of such liability stated in the declarations as applicable to 'each accident' is subject to the above provision respecting each person, the total limit of the company's liability for all damages, including damages for care and loss of services, arising out of bodily injury, including death at any time resulting therefrom, sustained by two or more persons in any one accident."

3. The principle has been summed up very succinctly by Judge Learned Hand in New York Trust Co. v. Island Oil & Transport Corp., 1929, 2 Cir., 34 F.2d 655, 656:

"It is quite true that contracts depend upon the meaning which the law imputes to the utterances, not upon what the parties actually intended; but, in ascertaining what meaning to impute, the circumstances in which the words are used is always relevant and usually in-

the only reasonable interpretation is to take the words of the policy which limit liability for "each person" to $10,000.00 to mean what they say. Where the recovery exceeds that amount, the liability still remains $10,000.00 for "each person". If, as happened here, the insurer settled one of the claims for less than that amount, *the benefit should go to it,* not to Winget, who, had she been the sole person injured, could not have recovered more than $10,000.00.

In the Minnesota case just cited, strangely enough, both sides sought to prorate the judgment. The company sought to limit its liability for costs to the extent of its coverage. The Answer of the Court was:

> "The undertaking is indivisible". Mannheimer Bros v. Kansas Casualty & Surety Co., 1921, 149 Minn. 482, 184 N.W. 189, 190.

In discussing a limitation to recovery of $5,000.00 for each person, the Court said:

> "The policy was for $10,000, with a limitation of $5,000, for injury or damage to any one person, and a total liability not greater than $10,000, to more than one person injured in the same accident. Both Hillstrom and Hanscom were injured in the one accident, and the terms of the policy quoted apply to the case. This limitation is unambiguous and free from doubt and cannot be added to without making a new contract for the parties. The question presented is controlled by the general rule that the measure of damages for the breach of a contract for the payment of money is the amount agreed to be paid with interest." Mannheimer Bros. v. Kansas Casualty & Surety Co., supra, 184 N.W. at page 191.

We agree with the conclusion reached. And we find no California case which, under conditions such as existed here, calls for an apportionment.

The application of a prorating method of liability would create confusion in litigation of this type. Except in the case of husband and wife, California Code of Civil Procedure, Sec. 427(9), when an accident results in injury to several persons, separate actions *may* be brought, as was done here. The court in which several actions are pending may consolidate them. California Code of Civil Procedure, Sec. 1048. But as consolidation is discretionary, there is the possibility of the cases going to trial at different times and separate judgments being rendered months apart. If the insured is to be held responsible for a proportionate share of the recoveries, he could not satisfy the first judgment or settle it without waiting for the result in the second case.

It is true that the insured is not brought before the court until there exists an unsatisfied judgment. At the present time, if the insured waits until all the cases are tried before satisfying any of the judgments or settling, the only penalty he incurs is interest on the portion of the judgment which he has to pay. He need not, unless he chooses to, seek a declaration of rights, either under the State, California Code of Civil Procedure, Secs. 1060–1062a, or the federal declaratory judgment statute (28 U.S.C. §§ 2201–2202; Rule 57, Federal Rules of Civil Procedure) in advance of the determination of all claims for injury which the policy covered. Pacific Indemnity Co. v. McDonald, 1939, 9 Cir., 107 F. 2d 446. If his ultimate liability is to be determined on a prorate basis, he would not know until all the cases have been determined against him what portion he could safely pay on the first judgment. For if the first judgment exceeded $10,000, and the second judgment were less, he would be confronted, as Standard is confronted in this case, by the claim that his liability is greater than $10,000 for each person. And, in the meantime, if we approve Winget's other ground of appeal, he would be penalized by being compelled to pay interest on *the whole amount* of the recovery. Which brings us to the second point of the Winget appeal.

(B) Interest on Amount of Judgment Against Towry

---

dispensable. The standard is what a normally constituted person would have understood them to mean, when used in their actual setting."

Under California law a judgment carries interest at the rate of 7 per cent per annum. Act 3757, Sec. 1, 2 Deering's California General Laws, p. 1349. Winget sought to have the trial court allow interest against Standard on the full amount of the judgment against Towry, $32,097.80. The court, after reciting in the findings the clause in the policy under which the claim was made, stated as its conclusion of law

"that plaintiff is not entitled to a pro-rata share of the total sum of Twenty Thousand and no/100 ($20,000.00) Dollars payable under said policy of insurance and is not entitled to interest on the total sum of Thirty-two Thousand no/100 ($32,000.00) Dollars, the amount of her judgment against the said Billy Towry, but is only entitled to interest on the said sum of Ten Thousand and no/100 ($10,000.00) Dollars as above set forth."

Paragraph II of the "Insuring Agreements" contains the following clauses:

"As respects such insurance as is afforded by the other terms of this policy under coverage A the company shall * * *

"(b) pay * * * all costs taxed against the insured in any such suit, all expenses incurred by the company, all interest accruing after entry of judgment until the company has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon, * * *

"The company agrees to pay the amounts incurred under this insuring agreement, except settlements of claims and suits, in addition to the applicable limit of liability of this policy."

Winget sought to have the trial court interpret the clause as warranting an award of interest not only on the portion of the Towry judgment for which Standard was liable, but on the entire amount of the judgment against Towry. This, the court refused to do. The Supreme Court of California in Sampson v. Century Indemnity Company, 1937, 8 Cal.2d 476, 66 P.2d 434, 109 A.L.R. 1162, had before it a clause identical with clause "B". It interpreted the clause to mean that the insurer was chargeable with interest *only* on the portion of the judgment for which it was liable. The court said:

" 'All interest,' as used in the provision above quoted, means all interest on that part of the judgment for which the company was liable, and not all interest on the entire judgment as contended by the appellant. To construe this provision to mean. that the company had agreed to pay the interest to become due on that part of the judgment which the company was not legally liable to pay would be an unnatural and strained construction of this provision of the policy. In our opinion, the only fair and reasonable inference to be drawn from this provision of the policy when considered with its other terms is that the company was to pay interest after judgment only upon that part of the judgment for which it was liable. So construed there is no ambiguity or uncertainty in the terms of the policy and therefore the rule of construction contended for by appellant has no application." Sampson v. Century Indemnity Company, supra, 8 Cal.2d at page 480, 66 P.2d 436.

This construction is reasonable. It finds support in the preamble to Paragraph II, which conditions the agreements to pay, including the agreement as to interest, to "such insurance as is afforded by the other terms of this policy under coverage A". Coverage A limits the liability to $10,000.00 for each person involved in an accident. The concluding clause of Paragraph II, which states that the amounts provided therein are "in addition to the applicable limit of liability of this policy", merely makes certain that costs, interest and the like are to be in addition to limit in the policy. But this clause cannot be turned into an undertaking to pay costs on *the entire judgment* recovered, regardless of this limit.

In Malmgren v. Southwestern Automobile Insurance Company, 1932, 126 Cal.App. 135, 14 P.2d 351, the court had before it an interest clause which was identical with

the last clause of Paragraph II just quoted. The court held that the interest recoverable against the insurance company is limited to the sum for which it is liable under the policy, saying:

"We cannot agree with this construction, for we are of the opinion that the 'interest on any verdict or judgment' which the company agreed to pay, 'irrespective of the limits expressed above,' had no reference to interest on the principal sum of any judgment for which principal sum the company was not in any manner liable. 'Interest is the compensation allowed by law or fixed by the parties for the use, or forbearance, or detention of money.' Civ.Code, § 1915. The only logical construction to place upon the word 'interest,' as used in the abovementioned policy, is that it referred only to interest accruing on the principal sum of a judgment for which respondent was liable under the terms of the policy. To interpret the policy in accordance with the contention of appellant would lead to the absurd result of rendering respondent liable indefinitely for the payment of the accruing installments of interest upon an obligation of a third person for which obligation respondent was not in any manner liable. We do not believe that the rule of strict construction against the insurer may be invoked to sustain such an unreasonable construction." Malmgren v. Southwestern Automobile Insurance Company, supra, 126 Cal.App. at page 140 [4], 14 P.2d at page 352.

This interpretation commends itself to reason. The interpretation which the trial court rejected would penalize the insurance company for exercising the right, or encouraging the insured, to appeal.

Our judicial system postulates the possibility of error by providing, both in the state and the federal system, for generous methods of appeal and review. If we hold an insurer liable for interest, not on the portion of the judgment for which it is liable, which it does not pay, but on the whole amount recovered against the insured, we are imposing vicarious liability. And, while vicarious liability exists in our law, it is the exception rather than the rule. And a contract should not be interpreted in such a manner as to impose upon a person responsibility for the obligations of others, even if it be in the form of interest only.

In the light of what has just been said, we do not believe that the clause under discussion lends itself to the strained construction which appellant Winget would place on it. Courts do not resort to forced construction in order to fasten liability upon an insurer which, by the terms of the policy, it has not assumed. Maryland Casualty Company v. Industrial Accident Commission, 1930, 209 Cal. 394, 397, 287 P. 468; Blackburn v. Home Life Insurance Co., 1941, 19 Cal.2d 226, 229, 120 P.2d 31.

It follows that the trial judge was right in limiting interest to the amount for which Standard was liable.

The judgment is affirmed.

4. New Jersey Fidelity & Plate Glass Ins. Co. v. Clark, 1929, 9 Cir., 33 F.2d 235, which is relied on for a contrary ruling was decided under Oregon law and before the decision in Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct.

817, 82 L.Ed. 1188, which commands us to apply state law to matters of this character. See, Williams v. Green Bay & Western Railroad Co., 1946, 326 U.S. 549, 550, 66 S.Ct. 284, 90 L.Ed. 311. Confronted then, as we are, with deci-

sions of the highest courts of California interpreting insurance contracts like the one involved in this case, we must follow them even in the face of a decision of our own giving a contrary interpretation, made *prior* to the decision in Erie Railroad Co. v. Tompkins, supra.