[Sac. No. 4473. In Bank.—February 24, 1931.]

LESLIE LEE BURR, Respondent, v. WESTERN STATES LIFE INSURANCE COMPANY (a Corporation), Appellant.

T. G. Crothers and M. H. Iversen for Appellant.

Hale McGowan, Jr., for Respondent.

THE COURT.—A hearing was granted in this court after decision by the District Court of Appeal, Third Appellate District, per Mr. Presiding Justice Finch, in order to

examine more fully the single question presented by the record. Upon such examination we are satisfied with the majority opinion of the District Court of Appeal, and hereby adopt it as the opinion of this court. It reads as follows:

"This is an appeal from an order denying defendant's motion for a change of the place of trial from Mendocino county to the city and county of San Francisco.

"In June, 1919, the plaintiff 'at the town of Wailuku, in the island of Maui, territory of Hawaii, and while he was then a resident of said island of Maui, made and executed his two certain applications in writing, . . . each applying to defendant for a policy of life insurance upon the life of plaintiff in the sum of $5,000, and said applications were duly forwarded to defendant at its home office in the city and county of San Francisco, State of California. . . . Thereupon and in compliance with and in pursuance of said applications, defendant, in said city and county of San Francisco, made and executed the policies of life insurance forming the subject matter of the above entitled action. . . . Thereupon said policies were forwarded to said plaintiff at Wailuku, in said territory of Hawaii.' The policies and the riders attached thereto and made a part thereof are identical in language except as to the policy numbers thereof, and each of said policies, in so far as material on this appeal, reads as follows:

" 'Western States Life Insurance Company, hereinafter known as the company, agrees to pay $5,000 . . . at the home office of the company, in San Francisco, California, as follows:

" 'To Olive B. Burr, wife of the insured, . . . immediately upon receipt of due proof of the death, during the continuance of this policy, of Leslie Lee Burr of Wailuku, Island of Maui, Territory of Hawaii. . . .

" 'In witness whereof, Western States Life Insurance Company has caused this policy to be signed by its president and secretary, or assistant secretary, at the home office of the company at San Francisco, California, this thirtieth day of June, 1919.'

"There was attached to each policy, at the time it was executed, and made a part thereof, a rider containing the following:

" 'Upon receipt of due proof . . . that the insured . . . has become wholly disabled by bodily injury or disease so that he is and will be presumably, thereby permanently and continuously prevented from engaging in any occupation, or performing any work, whatsoever for remuneration or profit, . . . then . . . one year after the anniversary of the policy next succeeding the receipt of such proof, the company will pay the insured the sum of $500, and a like sum on each anniversary thereafter during the lifetime and continued disability of the insured. . . .

" 'Upon receipt of due proof . . . that the death of the insured occurred before the policy anniversary nearest his sixtieth birthday as the result, directly and independently of all other causes, of bodily injury effected solely through external, violent and accidental means, and that such death occurred within sixty days after sustaining such injury, the company will pay instead of the face amount of this policy, double that amount, making $10,000, provided no disability benefit has been allowed under the policy. . . .

" 'Upon due proof . . . during the life of the insured, that the death of the beneficiary occurred before attaining age sixty . . . as the result, directly and independently of all other causes, of bodily injury effected solely through external, violent and accidental means while traveling as a passenger on a street car, railway train, steamship, licensed for regular transportation of passengers, or other public conveyance, operated by a common carrier, . . . the company will pay the insured the sum of $2,500.'

"After the execution of the policies, 'on or about the 14th day of October, 1922, and while plaintiff was a resident of the county of San Diego, State of California, and being at that time in said county of San Diego, said plaintiff forwarded and furnished to defendant at its home office in the city and county of San Francisco, proofs that he was then totally and permanently disabled, in accordance with the total and permanent disability provisions of said policies. Thereupon, defendant approved and allowed the claim of said plaintiff for disability benefits, . . . and thereafter and on the 26th day of December, 1922, the defendant, at its home office in said city and county of San Francisco, attached to each of said policies a total and permanent dis-

ability endorsement allowing and approving said disability benefits,' reading as follows:

" 'Total and Permanent Disability Endorsement

" 'Attached to and made a part of Policy No. 30334.

" 'The insured under this policy, No. 30334, having become totally and permanently disabled in accordance with the total and permanent disability provision of said Policy, and proof of such total and permanent disability having been approved October 14th, 1922, by Western States Life Insurance Company, the said Company agrees, subject to all the terms and conditions contained in the Policy, to waive payment of the premiums which may become due thereunder on and after June 30th, 1923, and to pay an annual income of $500 during the lifetime of the insured, without reduction in the amount of insurance, first payment to be made on June 30th, 1924.

" 'WESTERN STATES LIFE INSURANCE COMPANY

" 'BARRETT A. COATES,

" 'ASSISTANT SECRETARY & ACTUARY.

" 'San Francisco, Calif.

" 'December 26th, 1922.'

"The defendant made all the payments provided for by said allowance up to and including that of June 30, 1928, but refused to make any further payments. This action was brought to recover the payment falling due on June 30, 1929.

"The defendant is a corporation organized under the laws of the state of California and at all times material to the issues of this case its residence and principal place of business has been in the city and county of San Francisco, and it has had no place of business in Mendocino county. The plaintiff was, at the time the action was commenced, and for more than two years prior thereto had been continuously, a resident of Mendocino county. Article XII, section 16, of the Constitution reads as follows:

" 'A corporation or association may be sued in the county where the contract is made or is to be performed, or where the obligation or liability arises or the breach occurs; or in the county where the principal place of business of such corporation is situated, subject to the power of the court to change the place of trial as in other cases.'

574

"It is apparent that the only theory upon which the order can be affirmed, if at all, is that the contract of insurance was to be performed in Mendocino county.

■ "'In a suit upon the contract of a corporation, where no place of performance is expressly stipulated, it ought to be held performable in the place where the circumstances, viewed in the light of pertinent code provisions, indicate that the parties expected or intended it to be performed.' (*Bank of Yolo* v. *Sperry Flour Co.*, 141 Cal. 314, 316 [65 L. R. A. 90, 74 Pac. 855].)

■ "'A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful.' (Civ. Code, sec. 1636.) 'When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible; subject, however, to the other provisions of this title.' (Civ. Code, sec. 1639.) In this case there is nothing whatever except the writing from which to ascertain the intention of the parties. 'The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.' (Civ. Code, sec. 1641.) 'The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning.' (Civ. Code, sec. 1644.) 'Stipulations which are necessary to make a contract reasonable, or conformable to usage, are implied, in respect to matters concerning which the contract manifests no contrary intention.' (Civ. Code, sec. 1655.)

■ "No authorities need be cited to show that the riders attached to the contracts are parts thereof and are to be construed to the same effect as if they were set forth in the bodies of the contracts as clauses thereof. Each contract has for its object one general purpose, the payment of benefits, which are divided into four classes: (1) $5,000 upon the death of the insured when not caused by violence; (2) $500 a year upon his becoming totally disabled; (3) $10,000 upon his death by violence; (4) $2,500 upon the death by violence of the insured's wife. The contract expressly provides that payments of the first class shall be made 'at the home office of the company, in San Francisco, California'. The contract is silent as to the place at which the other pay-

ments are to be made. It was probably deemed unnecessary to state expressly where the other payments, if any should become due, are to be made, the natural inference being that they are to be made at the same place as the first, in the absence of any contrary intention appearing from the terms of the contract. It would be a strained construction of the contract to hold that, after expressly making the first of these benefits payable in San Francisco, the parties intended to make the other benefits payable elsewhere, there being nothing whatever in the contract to indicate such intention. For instance, the parties having expressly made the single death benefit payable in San Francisco, it does not seem possible that they could have understood that payment of the double death benefit is to be made at some other place. ▮ The terms of the contract are to be understood in their ordinary and popular sense and as a man of average intelligence and experience would understand them. 'Each clause is to be considered with reference to every other clause upon which it has any bearing, and all the clauses and provisions are to be construed together as the unified medium whereby the intent of the parties to the instrument is to be reached.' (*Jones* v. *Van Nuys,* 161 Cal. 158, 165 [118 Pac. 541, 544].) 'Each clause of the contract is to be looked to for light in interpreting the others.' (*Estate of Winslow,* 121 Cal. 92, 94 [53 Pac. 362].)

▮ " 'The intention of the parties to a contract as to the place where payments are to be made usually appears by express provision, or by necessary inference in the contract itself. In cases where the intention does not thus appear, the general rule is that the debtor must seek his creditor to make payment of his indebtedness. . . . While it is a rule of general acceptation that a debtor must seek his creditor to pay his indebtedness, it is always open to the parties to show by the express terms of the contract, or by fair inference therefrom, that it was the intention of the parties to pay at a particular place or within a particular state or country.' (6 R. C. L. 902; 21 R. C. L. 15.) 'It is a fair deduction that a contract is to be entirely performed at the place where it was made and where it expressly provides that part of the performance (payments, for instance), shall be made.' (5 Cal. Jur. 454; *Hammond* v. *Ocean Shore Dev. Co.,* 22 Cal. App. 167, 170 [133 Pac.

978]; *Fitzhugh* v. *University Realty Co.*, 46 Cal. App. 198, 201 [188 Pac. 1023].) While uncertainties and ambiguities in insurance policies are to be resolved against the insurer, courts must avoid putting a strained and unnatural construction on the terms of a policy and thereby creating an uncertainty or ambiguity. No term of a contract is either uncertain or ambiguous if its meaning can be ascertained by fair inference from other terms thereof. There is no difficulty in so ascertaining the intention of the parties to this action as to the place of payment, and the court must give effect to that intention. As said by Chief Justice Waste in *Ogburn* v. *Travelers' Ins. Co.*, 207 Cal. 50 [276 Pac. 1004]:

" 'In the interpretation of a written instrument the primary object is to ascertain and carry out the intention of the parties thereto. . . . As to the hardships, advantages, or disadvantages which may result from such a construction, the courts have nothing to do. . . . The intention of the parties is, of course, to be ascertained from a consideration of the language employed by them and the subject-matter of the agreement. . . . A contract should be construed, however, as an entirety, the intention being gathered from the whole instrument taking it by the four corners. . . . We have not lost sight of the familiar rule requiring all uncertainties and ambiguities in a policy of insurance to be resolved against the insurer, who is presumed to have selected and incorporated into the policy the language employed therein. That rule can only have application when the policy actually presents some uncertainty or ambiguity. In the absence thereof, the courts have no alternative but to give effect to the contract of insurance as executed by the parties.'

 "The defendant's breach of contract, if any, occurred at the place where payment was agreed to be made. It may be conceded that, under the constitutional provision quoted, the action could have been maintained in the county of San Diego, that being the county in which the disability of the plaintiff occurred, but the fact that the 'obligation or liability' arose in San Diego county does not give the plaintiff the right to prosecute the action in Mendocino county. 'Where the action is brought in a county other than one of those mentioned in section 16 of article XII of

the Constitution, the corporation defendant is entitled to have the cause tried in the county of its principal place of business . . . and the change of venue granted because the action has not been brought in the proper county.' (7 Cal. Jur. 132.)"

The order is reversed.

SHENK, J., Dissenting.—I dissent. The main policy, which was an ordinary life policy, provided for the payment of $5,000 to the beneficiary at the company's office in San Francisco, upon due proof of death. Attached to this policy was a rider providing for an annual payment of $500 "to the insured" upon due proof of total permanent disability. In my opinion this was a separate and distinct contract of indemnity and no place of payment thereof was provided for therein. At least the question is left in doubt. The general rule is stated in 48 Corpus Juris, at pages 592, 593, with an abundance of supporting authorities, as follows: "As a general rule, in the absence of any agreement or stipulation to the contrary, a debt is payable at the place where the creditor resides . . . or wherever else he may be found; and it is ordinarily the duty of the debtor to seek the creditor for the purpose of making payment, provided the creditor is within the state of his residence when the payment is due, unless otherwise provided by statute." It is not otherwise provided by statute in this state. Moreover section 1489 of the Civil Code specifically provides that in the absence of an *express* provision to the contrary an offer of performance may be made at the option of the debtor "1. At any place appointed by the creditor; or 2. Wherever the person to whom the offer ought to be made can be found." In this case the creditor elected to have the payment at his place of residence, known to the debtor, in Mendocino County. He could be found there and that was the appropriate place for tender of payment in order to discharge the obligation of the debtor. (24 Cal. Jur., p. 521.) Having failed to make tender of payment at the creditor's place of residence, a breach of the debtor's promise to pay occurred at that place and under section 16 of article XII of the Constitution the defendant could be sued at that place, no other place of payment being stipulated. (See *Bank of Yolo* v. *Sperry Flour Co.*, 141 Cal. 314 [65

L. R. A. 90, 74 Pac. 855].) In order to conclude that the defendant must be sued in the city and county of San Francisco, the main opinion indulges in inferences as to what was intended by the parties. When inferences must be resorted to, the provision for payment is necessarily not *express* and uncertainty is present. The rider was on the printed form prepared by the defendant and it is a cardinal rule that, when uncertainty exists, the contract is to be construed most strongly against the party who caused the uncertainty to exist. (Sec. 1654, Civ. Code.) Furthermore, if the terms of the contract are uncertain they must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it. (Sec. 1649, Civ. Code.) It is inconceivable that the defendant, the promisor in this case, believed that the plaintiff, in case of his permanent total disability, understood that he was to proceed or was to dispatch an agent to San Francisco to demand payment or, in the event of the refusal of payment, that he would be compelled to go to San Francisco to bring suit or suffer his testimony to be taken by deposition.

Much more compelling is the universal rule with reference to insurance policies that when uncertainty exists they will be construed most strongly in favor of the insured. From any and every approach to the problem I think the trial court drew the proper inferences and conclusions and that its order should be affirmed.

Curtis, J., concurred.

Mr. Justice Preston did not participate.