[Civ. No. 17927.   Second Dist., Div. Two.   Feb. 20, 1951.]

PROTEX-A-KAR  COMPANY, Plaintiff and Appellant, v. HARTFORD  ACCIDENT  AND  INDEMNITY  COMPANY et al., Respondents; THE  TROY  COMPANY, Defendant and Appellant.

Hibbard & Kleindienst for Plaintiff and Appellant.

Eugene S. Ives for Defendant and Appellant.

James V. Brewer and Crider, Runkle & Tilson for Respondents.

WILSON, J.—This is an action for declaratory relief in which plaintiff seeks a judicial interpretation of its rights under three policies of products liability insurance, one of

which was issued by defendant Hartford Accident and Indemnity Company and two by Underwriters at Lloyd's, London.

Plaintiff and cross-complainant The Troy Company are appealing from the judgment determining the liabilities of defendant insurance companies under their respective policies.

There are but two questions for determination: (1) Are defendant insurance companies liable under their policies for damage occurring after the policies had been cancelled but resulting from the use of plaintiff's product which had been sold during the periods of the respective policies; (2) as to cross-complainant The Troy Company, did defendant Underwriters effectively cancel its policies?

Prior to engaging in the manufacture of an antifreeze compound known as Protex-em, plaintiff procured a $10,000 policy of insurance from Hartford protecting it against any claims which might arise from the use of that product, effective October 10, 1947, to October 10, 1948, and a $40,000 excess policy from Underwriters effective October 23, 1947, to October 23, 1948.

Plaintiff commenced the manufacture of its antifreeze product and sold all of it to The Troy Company which disposed of it through distributors and wholesalers and by means of its own salesmen throughout various states. The first sale to Troy was made on October 17, 1947, and the last on December 2, 1947.

Because plaintiff and Troy had used Hartford's name in advertising the antifreeze product Hartford cancelled its policy effective November 13, 1947. That policy was then replaced by a $10,000 primary policy issued by Underwriters effective November 10, 1947, to November 10, 1948. After numerous claims for damages had been reported to the local representative of Underwriters it cancelled both of its policies as to plaintiff effective December 8, 1947.

The premium charged by both insurance companies for products liability coverage was based upon the dollar volume of sales of antifreeze made by plaintiff during the periods the companies admitted their policies were in effect.

It is the contention of plaintiff that defendant Hartford is liable for all damages suffered through the use of antifreeze manufactured and sold, and upon the selling of which it collected a premium, so long as the damage occurred between October 10, 1947, and October 10, 1948, but not to exceed $10,000; that Underwriters is liable on its primary

policy up to its limit of $10,000 for all damages suffered through the use of any antifreeze manufactured and sold by plaintiff after November 10, 1947, regardless of when the damage occurs; that as between the two primary insurance carriers the limit of liability of Hartford's policy should be exhausted before Underwriters shall become liable on its primary policy and that after the liability under the two primary policies is exhausted Underwriters should be liable on its excess policy, to the limit of that policy, for all damages resulting from the use of the antifreeze sold during the term of that policy without regard to when the damage occurs; that the date when the damage occurs in any accident rests upon its own peculiar facts.

In addition to advancing the same contentions as does plaintiff, cross-complainant Troy, which is named as an assured in each of the policies, maintains that insofar as it is concerned Underwriters failed to cancel its policies.

Defendants Hartford and Underwriters admit liability under their respective policies for accidents which occurred during the effective period of each policy but assert they are not liable for accidents occurring after the dates of their respective cancellations.

### The Hartford Policy

The pertinent portions of the Hartford policy are as follows:

"Insuring Agreements

"I. . . .

"Coverage D—Property Damage Liability—Except Automobile

"To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law, . . . for damages because of injury to or destruction of property, including the loss of use thereof, caused by accident . . .

"IV. Policy Period . . .

"This policy applies only to accidents which occur during the policy period . . .

"Conditions

"3. Definitions. . . .

. "(c) Products Hazard. The term 'products hazard' shall mean

"(1) the handling or use of, the existence of any condition in or a warranty of goods or products manufactured, sold, handled or distributed by the named insured, . . . if the accident occurs after the insured has relinquished possession thereof to others and away from premises owned, rented or controlled by the insured . . .

"17. Cancellation. . . . This policy may be canceled by the company by mailing to the named insured at the address shown in this policy written notice stating when not less than five days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date of cancellation stated in the notice shall become the end of the policy period . . .

"Declarations . . .

"Item 2. Policy Period: From October 10th, 1947 to October 10th, 1948 . . ."

It is a primary rule of interpretation that since an insurance policy is generally drawn by the insurer, any uncertainties or ambiguities in its terms are to be construed most liberally in favor of the insured. (*Blackburn* v. *Home Life Ins. Co.*, 19 Cal.2d 226, 229 [120 P.2d 31]; *Culley* v. *New York Life Ins. Co.*, 27 Cal.2d 187, 194 [163 P.2d 698].)

In the absence of an ambiguity a contract of insurance, like any other contract, must be interpreted according to the object and intention of the parties as expressed in the policy, in the light of the circumstances surrounding its execution. (*Blackburn* v. *Home Life Ins. Co., supra*; *Jew Fun Him* v. *Occidental Life Ins. Co.*, 88 Cal.App.2d 246, 249 [198 P.2d 711]; *Burr* v. *Western States Life Ins. Co.*, 211 Cal. 568, 576 [296 P. 273].)

It is obvious that what plaintiff sought in obtaining insurance was protection against damage resulting from the use of its product after it was on the market. Such contingency is plainly covered under "Condition (c)" and "Coverage D." The period of the policy is declared to be from October 10, 1947, to October 10, 1948, but there is also a provision equally clear in the policy that it may be cancelled by the insurer upon five days' notice to the insured and that the effective date of the cancellation shall become the end of the policy period. Under paragraph "IV," recovery is specifically limited to accidents occurring "during the policy period."

The cancellation clause does not render the policy ambigu-

ous nor is it in conflict with the other provisions. ▇ Each clause of the contract must be considered with reference to every other clause upon which it has any bearing and all the provisions are to be construed together for the purpose of ascertaining the intent of the parties. (*Burr* v. *Western States Life Ins. Co.*, 211 Cal. 568, 575 [296 P. 273].)

▇ When so considered, the only reasonable interpretation which can be given to the terms of the policy is that it was the intention of the parties that the policy was to be in effect from October 10, 1947, to October 10, 1948, unless it were sooner cancelled, in which event the end of the policy period would be the date of cancellation. Since recovery is limited to accidents occurring "during the policy period" the insurance company cannot be held liable for accidents occurring after the end of that period or November 13, 1947, the date of the cancellation. To construe it otherwise would give effect only to the clause declaring the policy period and would ignore the provisions of the cancellation clause. Since the language of the policy is clear and unambiguous its plain and unequivocal terms cannot be disregarded to make a new contract for the parties. (*Brickell* v. *Atlas Assurance Co., Ltd.*, 10 Cal.App. 17, 28 [101 P. 16]; *Finkbohner* v. *Glens Falls Ins. Co.*, 6 Cal.App. 379, 381-2 [92 P. 318].)

▇ Plaintiff admits that notice of cancellation was properly given. It also concedes that Hartford is not liable for accidents occurring after October 10, 1948. It asserts, however, that because Hartford collected premiums based upon sales made between October 10, 1947, and November 13, 1947, to allow the company to cancel the policy as of the latter date and to disclaim liability for accidents occurring thereafter is tantamount to a fraud on the insured which has paid for protection it has not received. This contention is without merit. Had Hartford not cancelled and had the policy remained in effect for the full one-year period, the insurance company would have collected premiums based upon sales made during the entire year. At the end of that time had plaintiff failed to obtain a new policy or had Hartford refused to renew its policy, admittedly plaintiff would have no claim for accidents occurring after the expiration date from the use of its product sold during the policy period. Plaintiff is not in any worse position because the policy was cancelled and premiums were collected only for sales made during the period the policy was in effect. Plaintiff had five days in

which to secure protection and, indeed, it immediately obtained another policy from Underwriters which was in effect three days before the cancellation by Hartford became effective.

## THE UNDERWRITERS' POLICIES

The liability of Underwriters under its excess policy is contained in a rider, reading in part as follows:

"To indemnify the Assured for any and all sums which the Assured shall by law become liable to pay, and shall pay or by final judgment be adjudged to pay . . . to any person or persons as damages for damage to property . . . by reason of operations more fully described in Policy No. LCX 5974 issued to the Assured by the Hartford Accident and Indemnity Company, hereinafter called the Primary Insurer.

"1. It is expressly agreed that as regards damage to property, the Underwriters hereon shall be liable only for the excess of loss over the aggregate liability of the primary Company of °$10,000.00 ultimate net loss in respect of all accidents or occurrences during the policy period and then only up to Forty Thousand Dollars ($40,000.00) aggregate liability in all accidents or occurrences. It is understood and agreed that the Underwriters liability shall not exceed One Thousand Dollars ($1,000.00) in any one claim or occurrence and not more than Forty Thousand Dollars ($40,000.00) aggregate liability in the period of this Certificate.

"It is understood, however, that there is no limit to the number of accidents for which claims may be made hereunder, provided such accidents occur during the currency of this Certificate . . .

"5. It is understood and agreed that this Certificate is subject to the same warranties, terms and conditions . . . as are contained in or as may be added to said policy of the Primary Insurer . . .

"7. This Certificate shall be cancelled . . . by or on behalf of the Underwriters by giving five day's [sic] notice of such cancellation."

Underwriters' liability under its primary policy which was issued as a substitute for the Hartford policy, is expressed in a rider which reads:

### "Products Property Damage

"To pay on behalf of the Assured all sums for which the Assured may become obligated by reason of the Liability

imposed upon the Assured by law for damages or destruction of property caused by or due to any merchandise or product described in this policy occurring within the United States or Canada, arising out of the existence, possession, consumption or use of any product manufactured, sold, handled, delivered or distributed by the Assured during the term of this policy or prior thereto, whether sold for consideration or distributed gratis and while these products are away from the Assured's premises and are out of the care or custody of the Assured or his employees.

"Limits Endorsement

"It is further agreed that the Underwriters liability under this endorsement shall be limited to the sum of ONE THOUSAND AND NO/100 DOLLARS ($1,000.00) for damage to or destruction of property of any person or persons arising out of one accident and subject to said limit per accident the Underwriters liability is limited to TEN THOUSAND AND NO/100 DOLLARS ($10,000.00) for all accidents occurring during the period of this policy . . ."

The policy also contains a cancellation clause reading as follows:

"This Certificate shall be cancelled at any time at the written request of the Assured or by or on behalf of the Underwriters by giving five days' notice of such cancellation; if cancelled by or on behalf of the Underwriters notice of cancellation mailed to the address of the Assured stated in this Certificate shall be sufficient notice . . ."

■ Plaintiff contends that since Underwriters insured against liability "arising out of the existence, possession, consumption or use of any product manufactured, sold, handled, delivered or distributed by the assured during the term of this policy or prior thereto," the time when the damage occurs does not affect the coverage so long as the product was sold and out of the possession of the assured during the stated term of the policy or prior thereto. By this reasoning plaintiff has obviously disregarded the language contained in the "Limits Endorsement" of the primary policy to the effect that the insurer's liability shall be limited to $10,000 for *"all accidents occurring during the period of this policy"* and the provisions of the cancellation clause.

Underwriters' excess policy also contains a cancellation

clause and specifically provides that there is no limit to the number of accidents for which claims may be made *"provided such accidents occur during the currency of this Certificate"* and that Underwriters shall be liable only for the excess of loss over the aggregate liability of the primary company *"in respect of all accidents or occurrences during the policy period"* and not more than $40,000 aggregate liability *"in the period of this Certificate."*

Considering all the clauses together the only construction which can be given to the policy is that the insurance company is liable for damages arising out of the use of plaintiff's product manufactured, sold, handled, delivered or distributed either during or prior to the term of the policy provided the accident occurs during the policy period. Underwriters having effectively cancelled its policies on December 8, 1947, cannot be held liable to plaintiff for accidents occurring subsequent to that date.

Plaintiff cites the case of *Kelley* v. *Indemnity Ins. Co.*, 252 App.Div. 58 [297 N.Y.S. 228] (affirmed without opinion 276 N.Y. 606 [12 N.E.2d 599]) as determinative of the issues on this appeal. The facts of that case are almost identical with those in the instant action. The insurance company issued a products liability policy effective for one year. While the policy was in force the insured shipped a consignment of one of its manufactured products. Subsequently the policy was cancelled for nonpayment of premium and less than a week later while the shipment was being unpacked one of the bottles exploded causing personal injuries. The distinction between the Kelley case and the one under consideration is in the language contained in the two policies. In the cited case the insuring clause indemnified against bodily injuries accidentally suffered during the term of the policy by any person not employed by the assured. Attached to the policy, however, was a rider stipulating that the insuring clause was eliminated and in lieu thereof the assured agreed to pay any loss incurred on merchandise "manufactured, handled or distributed by the assured which has actually been sold to a purchaser . . . during the term of this endorsement, . . ." The policy also contained another endorsement providing that in consideration of a flat charge of $10 the policy was extended to cover liability of the assured in respect of products sold prior to the inception date of the policy for "accidents occurring during the policy." The court held

that the printed provisions of the insuring portion of the policy having been eliminated, the language contained in the rider was controlling; that the insurer was liable under its policy for injuries occurring at any time from products sold after the effective date of the policy but with respect to products sold prior to the effective date of the policy the insurer's liability extended only to accidents occurring during the policy period.

## Troy Company Cancellation

■ Written notice of cancellation of each of Underwriters' policies was sent to plaintiff by the insurance company but no notice of cancellation was given by that company to Troy. It is admitted that Troy had knowledge of such cancellation through the plaintiff and it was upon such actual notice that the trial court found that the policies were effectively cancelled.

In a rider attached to Underwriters' excess policy under "Remarks" it is provided: "It is hereby understood and agreed, anything in the policy to the contrary notwithstanding, that the policy may not be cancelled by the Company as reduced in coverage by the Company until five (5) days' [sic] after notice of cancellation or reduction in coverage has been given, in accordance with the conditions of the policy to The Troy Co., 520 West 22nd Street, Los Angeles, California."

In the cancellation clause of the primary policy it is provided that "if cancelled by or on behalf of the Underwriters notice of cancellation mailed to the address of the Assured stated in this Certificate shall be sufficient notice."

Since notice was not given by Underwriters to Troy, either written or otherwise, the insurance company has not complied with the provisions of its policies and cancellation was not effective as to The Troy Company. Neither notice to plaintiff nor the fact that Troy learned of the cancellation relieves the insurance company from the necessity of giving notice in accordance with the terms of its policies.

The judgment insofar as it is (1) in favor of Hartford Accident and Indemnity Company and Underwriters at Lloyd's, London and against plaintiff, (2) in favor of Hartford Accident and Indemnity Company and against The Troy Company is affirmed, and insofar as it is in favor of

Underwriters at Lloyd's, London and against The Troy Company it is reversed with directions to enter judgment in favor of The Troy Company.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied March 9, 1951.