[Civ. No. 23086.   Second Dist., Div. Three.   Dec. 22, 1958.]

CLYDE BRUCE AITCHISON, JR., Plaintiff and Appellant,
v. FOUNDERS INSURANCE COMPANY (a Corporation), Defendant and Appellant; SUN VALLEY IN-
VESTMENT COMPANY (a Corporation), Respondent.

John G. Sobieski and Zoltan A. Harasty for Plaintiff and Appellant.

Bolton, Groff & Dunn and Gene E. Groff for Defendant and Appellant.

Anderson, McPharlin & Conners and Robert E. Jones for Respondent.

NOURSE, J. pro tem.*—By the first cause of action of his complaint the plaintiff hereinafter called "Aitchison" sought a declaratory judgment as to his rights and the duties of defendant Founders Insurance Company, a corporation, hereinafter called "Founders," under a policy of insurance issued to him by Founders. By the second cause of action he sought a declaration that certain representations made to him by Sun Valley Investment Co. hereinafter called "Sun Valley," were "negligent, careless, reckless and erroneous and not warranted by the information available to it at the time" and that the defendants were liable for such damages as "Plaintiff may sustain by reason of his purchase of said policy of insurance in reliance on the representations by Defendants herein set forth."

The complaint does not contain any prayer for damages and the pretrial order does not include damages as an issue to be tried.

The trial court entered its judgment declaring that Founders was obligated to indemnify Aitchison against the alleged claims set forth in the first cause of action and rendered judgment in favor of Aitchison against Founders in the sum of $6,535.60 plus interest, that sum being a part of the loss claimed by Aitchison to have been sustained by him and for which he claimed indemnity. It rendered judgment in favor of the defendant Sun Valley.

---

*Assigned by Chairman of Judicial Council.

Founders appeals from the declaratory judgment rendered and from the money judgment rendered against it. Aitchison appeals from the judgment in favor of Sun Valley.

FOUNDERS' APPEAL

The facts as disclosed by the evidence so far as the evidence as to them was admitted against Founders are:[1]

Effective as of November 1, 1955, Founders issued to Aitchison a policy of insurance entitled "Comprehensive General Liability Policy." By the terms of this policy, exclusive of the rider hereinafter described and which is the basis of the litigation here, Founders agreed by Coverage A to pay on behalf of Aitchison all sums which he should become legally obligated to pay as damages because of bodily injury sustained by any person and caused by accident; by Coverage B, to pay all sums which Aitchison should become legally obligated to pay as damages because of the injury to or destruction of the property of another through the ownership, maintenance or use of any automobile; by Coverage C to pay on behalf of Aitchison all sums which he should become legally obligated to pay as damages because of injury to or destruction of property caused by accident but excluding damage caused by the use of an automobile. Attached to the policy at the time of its issuance was a rider or endorsement which, so far as is pertinent here, reads as follows: ". . . [T]his policy, as respects Coverage C, . . . is amended to indemnify the insured against any claim or claims *arising out of the insured's occupation as a buyer or seller of metal ores*, . . . which may be made against the insured *by reason of any negligent acts, errors or omissions committed by the insured and/or employees of the insured* in the conduct of insured's business as stated above and providing always that such claim or claims are made against the insured during the currency of this policy." (Italics ours.) It further provided that the limits of liability of Founders were "$5,000 each occurrence, $25,000 aggregate," the insured to bear the first $100 of each loss. It is the

---

[1] At the trial of the action Aitchison did not assert that the provisions of the policy as to which a declaration of rights was sought were ambiguous and the evidence offered by him as to the circumstances surrounding the application for the insurance and as to oral statements made by Aitchison to Sun Valley and by its officers to him as well as evidence of statements made by the underwriter of Founders to Sun Valley were excluded as against Founders but admitted as against Sun Valley. Aitchison, cannot, therefore, here support the judgment against Founders upon a claim of ambiguity in the policy and the evidence which was received against Sun Valley only.

interpretation of this endorsement which constitutes the basis of the present litigation.

Aitchison was engaged in the business of buying and selling tungsten ore and tungsten salts. Among the persons to whom he sold was an agency of the government of the United States known as the General Services Administration, hereinafter called "the Administration." This agency purchased only tungsten ores or tungsten salts of domestic origin and Aitchison was required on each sale to the agency to certify that the ores delivered by him were of domestic origin. Among the persons from whom Aitchison purchased tungsten were one Roth and one Williams. In purchasing from them Aitchison required from them a certificate that the ores were of domestic origin.

Prior to the issuance of the policy in question Aitchison had purchased from Roth or Williams tungsten for which he had made a net payment of $9,175.94. After the policy became effective he made further purchases from them for which he made payments in the sum of $30,050.63. Some of these ores he mingled with ores he had acquired from other sources and in four different lots delivered them to the Administration, receiving for said lots $20,234.74. After receiving payment for these lots it was discovered that the ores purchased from Roth and Williams were of foreign origin and had been smuggled into the United States. Thereupon the United States Collector of Customs seized the four lots of tungsten sold by Aitchison to the Administration, claiming they were forfeited to the United States as smuggled property.[2] Aitchison then made application to be relieved from the forfeiture. His petition was granted upon condition that he pay the duties upon the smuggled tungsten plus the costs of seizure. These duties and costs amounted to $6,935.60.[3]

The Administration also asserted that the payments made by it to Aitchison were illegal payments and demanded the

[2] Under the provisions of section 1593, title 19, U.S.C.A., smuggled goods are forfeited to the United States upon entry into the United States but the title of the United States to the goods is not perfected until the forfeiture has been judicially declared. The United States cannot assert a claim against an innocent purchaser for the value of the goods but may only seize the goods and have the forfeiture declared. (*National Atlas Elevator Co.* v. *United States*, 97 F.2d 940, 943-944; *Caldwell* v. *United States*, 8 How. (U.S.) 366 [12 L.Ed. 1115]. See also 18 U.S.C.A., § 545.)

[3] There were four seizures and the respective amounts charged by customs for a waiver of the forfeiture were $480.60; $2,585; $1,785; and $2,085.

return of the monies paid Aitchison, to wit, $20,318.28 and claimed a lien upon all tungsten delivered by Aitchison to secure payment of its claim for refund.

By its decree the court declared: That each of the four payments made to the Customs Service as above noted was a claim made against Aitchison "by reason of negligent acts, errors and omissions committed by plaintiff in the conduct of his business" as a buyer of tungsten ores; that as each claim had been made during the currency of the policy in question, Founders was obligated to indemnify Aitchison against each claim for the amount thereof less, as to each, the sum of $100. It rendered judgment against Founders accordingly. It further decreed that the Administration had made claim against Aitchison on account of the tungsten ores sold by him to it in the following amounts: as to Lot 10, $3,737.39; as to Lot 13, $10,213.28; as to Lot 14, $2,000.91; as to Lot 15, $4,283.16; and that Founders was obligated to indemnify Aitchison against these claims but was entitled to offset against each claim "the fair market value of any of said four lots of tungsten ores which may be returned to plaintiff as a result of any settlement, or suit, in respect of said occurrences," that the amount of Founders' liability was subject, however, to the limitations of liability as expressed in the rider.

The payments made by Aitchison to Customs Service were made after Founders had asserted that its policy did not cover either the claims of the United States Government to the smuggled property or the claim of the Administration.

Appellant Founders asserts that the rider in question constitutes liability insurance covering damages caused by Aitchison to the property of others and does not cover business losses suffered by Aitchison by reason of his "negligent acts, errors or omissions." There is not the semblance of merit in this contention.

Coverage B and Coverage C of the policy clearly covered the insured against liability to third persons for damages to their property and the rider for which Aitchison paid an additional premium of $100 would have added nothing to the coverage of property damage if it should be given the construction for which Founders contends.

It was clearly the intent of the parties, by the rider, to indemnify the insured against claims other than those against which Aitchison was indemnified under Coverage B and Coverage C and the only limitations placed upon the character of these claims by the rider were: (1) that they arise out of

Aitchison's occupation as a buyer and seller of tungsten and (2) that they be made by reason of a negligent act, error or omission of Aitchison.

It is further Founders' contention that even if the policy is not limited to claims made because of damage to the property of others that still the claims asserted were not such as to fall within the coverage of the rider.

The claims made by the Administration and those made by Customs must be considered separately.

█ The case having been tried in the trial court upon the basis that the policy was not ambiguous in its terms and no evidence having been admitted as against Founders which would justify a holding that it was the intent of the parties to cover any risk not falling within the language contained in the rider, or that Founders was estopped from claiming the benefit of terms of the policy as issued,[4] we must determine Founders' liability as to each class of claims by applying the language used in the policy and the trial court could not and we cannot add to the language of the rider or omit any of the language used in the rider in determining its meaning. (*Long* v. *West Coast Life Insurance Co.*, 16 Cal.2d 19, 24 [104 P.2d 646], *Continental Cas. Co.* v. *Phoenix Constr. Co.*, 46 Cal.2d 423, 432 [296 P.2d 801, 57 A.L.R.2d 914] ; *Protex-A-Kar Co.* v. *Hartford Acc. etc. Co.*, 102 Cal.App.2d 408, 412 [227 P.2d 509] ; *Carabelli* v. *Mountain States L. Ins. Co.*, 8 Cal. App.2d 115, 117 [46 P.2d 1004] ; *Burr* v. *Western States Life Ins. Co.*, 211 Cal. 568, 576 [296 P. 273].)

### Claims of the Administration

█ Applying the language of the rider to the claim of the Administration, we are convinced that the trial court correctly declared that this claim was within the coverage of the rider. The Administration's claim arose out of the error of Aitchison in selling to the Administration as tungsten of domestic origin that which in fact was foreign. Founders has not in its brief asserted that the word ''error,'' as used in the rider, is modified by the word ''negligent.'' We must assume that Founders in writing the policy intended the word to have its ordinary meaning and that it used it to cover a hazard which was not due to a negligent act or omission. (Civ. Code, § 1644; *Continental Cas. Co.* v. *Phoenix Constr. Co., supra*, 46 Cal.2d 423, 438.) In Webster's International Dictionary, second edition,

---

[4] In neither cause of action does Aitchison attempt to plead estoppel against Founders.

the word "error" is defined as follows: "Belief in what is untrue . . ." and "mistake" is there given as a synonym of "error." It is undisputed here that when Aitchison sold the smuggled tungsten to the Administration he honestly but mistakenly believed it to be domestic tungsten and had he not made this error there could have been no claim on the part of the Administration. As the transaction was in the business of Aitchison and as the claim has as its foundation his error, it clearly falls within the coverage of the policy.

■ We believe, however, that the trial court was in error in attempting to fix the amount of Founders' liability on account of this claim. The policy being a contract of indemnity against claims, Aitchison was not entitled to payment of the indemnity until the claims had been paid (Civ. Code, § 2778, subd. 2) and would then only be entitled to the loss that he suffered by reason of such payment. The Administration claim has not been paid nor Aitchison's liability for it adjudicated and the trial court should have limited its declaration to the fact that the claim of Administration was a claim covered by the policy and not attempted to fix the amount of Founders' liability, for what its liability may eventually be could not have been determined by the trial court upon the evidence before it.[5]

### Claims of the Collector of Customs

■ In our opinion, the court erred in decreeing that Founders was obligated to indemnify Aitchison "against the claims heretofore made by the Customs Service" and in awarding judgment against defendant in the amount of those payments. The payments made to the Customs Service were not made in the satisfaction of any claim by the United States for the amount thereof. These payments were not made through error but were voluntarily made to induce the government to waive its right to have the forfeiture of the goods declared. The government's right to forfeiture did not arise out of any negligent acts, errors or omissions committed by the insured or his employees. Its right was founded on and arose solely out of the wrongful acts of Roth and Williams in smuggling the goods into this country. The payment to the United States was, therefore, not a claim which arose by reason of any negligent act, error or omission of the insured.

---

[5]The amount of Aitchison's loss and of Founders' eventual liability was not an issue tendered by the pleadings or within the issues defined in the pretrial order.

As we have heretofore pointed out there are three conditions precedent to Founders' obligation to indemnify Aitchison. One, the claim must arise out of insured's occupation; two, it must be made by reason of, i.e. arise out of negligent acts, errors or omissions of Aitchison or his employees; and, three, it must be made during the currency of the policy. The government's claim of ownership of the property did not fall within the second of the conditions named. In order to hold that the payments made to the Customs Service constituted claims within the coverage of the policy it would be necessary to ignore the clear terms of the policy that the claims must be made by reason of a negligent act, an error or an omission committed by the insured. This we cannot do. (*Burr* v. *Western States Life Ins. Co., supra,* 211 Cal. 568, 576.)

Appellant Founders also contends that the first cause of action set forth in the complaint does not state sufficient facts to entitle plaintiff to declaratory relief. We see no merit in this contention. At the time the action was commenced claims had been made against Aitchison which he asserted were covered by the contract of indemnity; Founders had then asserted that none of the claims fell within the coverage of that contract and had denied any obligation to indemnify Aitchison against these claims and had refused to defend him against them.

Thus, there was an actual controversy existing between the parties as to the rights of Aitchison and the duties of Founders and the fact that the claim of the Administration had not ripened into a loss and that, therefore, Aitchison could ask no more than a declaration that the policy covered claims such as those made by the Administration did not in any wise affect his right to have his rights and the duties of Founders judicially declared. The dispute was one that fell clearly within the language of section 1060 of the Code of Civil Procedure, which declares that any person interested under a contract may, in case an actual controversy exists relative to the legal rights and duties of the parties to that contract, bring an action for the declaration of his rights and the duties of the other party and that he may maintain the action even though he can claim no further relief than the declaration.

### AITCHISON'S APPEAL

Plaintiff Aitchison appeals from the judgment rendered in favor of the defendant Sun Valley. He bases his appeal upon the ground that if the judgment as to Founders is

reversed then the trial court's finding that it was untrue that Sun Valley was negligent and careless, reckless or erroneous in any of its representations and that it did not make any representations not warranted by the information which it possessed or had available was contrary to the evidence and the judgment in Sun Valley's favor must likewise be reversed.

Undoubtedly Aitchison's position on his appeal is premised upon this court sustaining the position of Founders on its appeal, that the contract in question only granted indemnity against claims by third persons for damage to their property. We have not, on Founders' appeal, sustained this position, but have only held that the policy was limited to claims against Aitchison which were founded upon his negligent acts, errors or omissions and have further held that such claims need not be founded upon injury or damage to the property of others. This holding does not have the effect of making the representations made by Sun Valley untrue for what Aitchison sought and what Sun Valley represented he had obtained was a policy which would protect him against claims arising out of his negligence, errors or omissions.[6] The policy issued did cover claims of the character as to which Aitchison requested protection.

The fact that the claim of the United States government to the right to forfeit the goods is not covered under the policy because it did not arise out of any act, error or omission of Aitchison or his employee does not make the representations untrue and the findings of the trial court above mentioned are amply sustained by the evidence.

The judgment insofar as it declares that the alleged claims of the Customs Service are within the coverage of the policy and awards a money judgment therefor and insofar as it fixes the amount of liability of Founders on account of the claims by the General Services Administration, is reversed with directions to the trial court to enter judgment in favor of the plaintiff, declaring that the claims of General Services Admin-

---

[6]Aitchison's allegations as to the representations made to him are set forth in paragraph III of the second cause of action of the complaint which reads as follows: "During the months of October and November 1955, at times well known to the Defendants, Plaintiff advised Defendant Sun Valley Investment Co. that plaintiff *desired to secure an insurance policy that would protect Plaintiff against any and all claims* against Plaintiff *arising out of negligence, errors, or omissions* by Plaintiff in the conduct of Plaintiff's business as a buyer and seller of tungsten and tungsten salts, including possible liability for purchasing materials whose title should later turn out to be cloudy. . . ." (Italics ours.)

istration are within the coverage of the policy and that Founders is obligated to indemnify Aitchison within the limits of the policy for any loss sustained by him by reason of said claims.

The judgment in favor of defendant Sun Valley Investment Company, a corporation, is affirmed.

Appellants Aitchison and Founders shall each bear their own costs and Sun Valley shall have judgment against Aitchison for its costs on appeal.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied January 7, 1959, and the petition of plaintiff and appellant for a hearing by the Supreme Court was denied February 18, 1959. Schauer, J., was of the opinion that the petition should be granted.